**John RAICOVICH, Petitioner,**

.v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 81–1788.

United States Court of Appeals, District of Columbia Circuit.

Argued March 29, 1982.

Decided April 16, 1982.

Keith E. Secular, New York City, with whom Bruce H. Simon, New York City, and Sally M. Armstrong, Washington, D. C., were on the brief, for petitioner.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., and Edward F. Ward, Jr., Asst. Gen. Counsel, United States Postal Service, Washington, D. C., were on the brief, for respondent. Jane M. Edmisten, Atty., Merit Systems Protection Board, Washington, D. C., also entered an appearance for respondent.

Before WRIGHT, WILKEY and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This is a petition for review of a decision of the Merit Systems Protection Board ("MSPB" or "Board"), filed pursuant to 5 U.S.C. § 7703. The Board's decision affirmed the United States Postal Service's ("USPS" or "Postal Service") refusal to restore petitioner to employment after he recovered from a job injury more than one year from the commencement of compensation benefits. Petitioner requests that the decision be set aside as contrary to section 22(b)(2) of the Federal Employees' Compensation Act, 5 U.S.C. § 8151(b)(2). The petition is granted, for we find that the Board's decision is "not in accordance with law," 5 U.S.C. § 7703. Accordingly, the decision is vacated and the Board is directed to order petitioner reinstated.

## I. BACKGROUND

Petitioner John Raicovich worked at the Hialeah, Florida Post Office for eighteen years between 1954 and 1972. On September 28, 1972, he sustained a disabling injury in the course of his official duties. Joint Appendix (J.A.) 11. He was retained on the Postal Service rolls on "Leave Without Pay" status and began receiving disability compensation. Because of his continued absence exceeding one year, he was removed from the Postal Service rolls on December 28, 1973, Respondent's Appendix (R.A.) E–1, but continued receiving disability benefits until December 5, 1979. J.A. 13.

On June 18, 1979, petitioner wrote to the Postmaster at Hialeah, Florida, John Anderson, to inform the Postal Service that a recent medical examination indicated fitness for reemployment and to request reinstatement. J.A. 68. Petitioner renewed his request for reinstatement on December 3, 1979. J.A. 70. It is undisputed that vacancies then existed and that those vacancies were ultimately filled by new employees. J.A. 20. However, on January 17, 1980, the Miami Sectional Center Director of Employee and Labor Relations advised petitioner that reinstatement was "not automatic" and that "after a careful review" of petitioner's previous work record, reinstatement was denied. R.A. F–1. Postmaster Anderson offered clarification shortly thereafter. He explained that a "careful review" of petitioner's "work performance while an employee" indicated that petitioner's reinstatement was "not . . . in the best interests of the Postal Service." J.A. 72. Postmaster Anderson also advised petitioner of his right to appeal to the MSPB.

Petitioner appealed to the MSPB and a Presiding Official conducted a hearing on March 21, 1980. J.A. 17–64. The Postal Service's case was based upon its understanding that applicants such as petitioner were merely entitled to "priority consideration" (or, as termed in the USPS's response to petitioner's application, "careful review") and that such consideration was properly informed by a former employee's previous work record. J.A. 22–23. Thus, Fred Valdez, Delivery Supervisor, and Postmaster Anderson testified that petitioner had been subject to three disciplinary suspensions (a two-day suspension, effective December 6, 1969; a fourteen-day suspension, effective June 21, 1971; and a thirty-day suspension, effective January 8, 1972), J.A. 26–27, 32, and that petitioner had ten job-related accidents, J.A. 27, 32. There was also testimony about petitioner's use of sick leave. J.A. 33. On cross-examination, it was conceded that there were no charges pending against petitioner at the time of his disabling injury, J.A. 38, 42, that there had been no effort to remove him prior to that time, *id.*, that there was no evidence that the ten accidents were willful, J.A. 29, 39, and that there was nothing to suggest that petitioner abused sick leave, J.A. 40. Moreover, petitioner argued that consideration of his previous work record was improper. J.A. 25, 58–62. The Presiding Official, however, affirmed the Postal Service's decision not to reinstate petitioner. J.A. 11. In affirming, the Presiding Official stated that petitioner did not have "an absolute right to reemployment"; that he was "entitled only to priority consideration"; and that "the decision whether to reemploy . . . may be based upon any valid, work-related considerations," including an employee's previous work record. J.A. 14. The Presiding Official rejected the notion that a previous work record could be considered only when a disciplinary action which might lead to removal was pending at the time of the compensable injury. "The more reasonable standard," said the Presiding Official, "is whether the agency can reasonably expect the recovered employee to be competent and effective. To the extent that a . . . previous work record aids . . . that determination, it may be considered." J.A. 15. The Presiding Official concluded that petitioner's previous work record justified the agency's refusal to reemploy. *Id.*

The initial decision of the Presiding Official was affirmed by the Board, which relied only upon petitioner's three disciplinary suspensions—especially the last which occurred within nine months of the compensable injury—as a basis for denying restoration. J.A. 8. The Board found it unnecessary to consider whether non-disciplinary aspects of petitioner's previous work record could properly be taken into account.[1] J.A. 9. The case was then brought here for review.

## II. ANALYSIS

### A. *The Statute and Implementing Amendments*

The 1974 Amendments to the Federal Employees' Compensation Act were designed "to modernize and update" the federal compensation system so that it would continue to serve as "a model of efficient and equitable compensation for workers injured in the performance of their duties." 120 Cong.Rec. 13399 (1974) (remarks of Rep. Daniels). *See also id.* at 27673 (remarks of Sen. Williams); H.R.Rep.No.1025, 93d Cong., 2d Sess. 1–2 (1974) (hereinafter H.R. Rep.); S.Rep.No.1081, 93d Cong., 2d Sess. 1–2 (1974) (hereinafter S.Rep.), U.S.Code Cong. & Admin.News, p. 5341. A "key provision" of the Amendments established certain job retention rights for federal employees, including Postal Service employees.[2] 120 Cong.Rec. 27674 (1974) (remarks of Sen. Williams). That provision states:

(b) Under regulations issued by the Office of Personnel Management—

---

1. If the Board had relied upon the non-disciplinary aspects of petitioner's previous work record, as well as the three disciplinary suspensions, our decision to reverse would stand.

2. *See* 39 U.S.C. § 1005(c) (5 U.S.C. § 7501 *et seq.* made generally applicable to Postal Service employees).

(1) the department or agency which was the last employer shall immediately and unconditionally accord the employee, if the injury or disability has been overcome within one year after the date of commencement of compensation or from the time compensable disability recurs if the recurrence begins after the injured employee resumes regular full-time employment with the United States, the right to resume his former or an equivalent position, as well as all other attendant rights which the employee would have had, or acquired, in his former position had he not been injured or disabled, including his rights to tenure, promotion, and safeguards in reductions-in-force procedures, and

(2) the department or agency which was the last employer shall, if the injury or disability is overcome within a period of more than one year after the date of commencement of compensation, make all reasonable efforts to place, and accord priority to placing, the employee in his former or equivalent position within such department or agency, or within any other department or agency.

5 U.S.C. § 8151(b). The provision *guarantees* an injured employee who recovers within a year from the commencement of compensation "the right to return to his former position or an equivalent one." 120 Cong.Rec. 13399 (1974) (remarks of Rep. Daniels). For a former employee such as petitioner, whose disability exceeds one year, "the employing agency or department is to accord ... priority in employment ...." *Id. See, also id.* at 13402 (remarks of Rep. Gaydos), 27674 (remarks of Sen. Williams), 27675 (remarks of Sen. Javits); H.R.Rep. at 10; S.Rep. at 4, 12. "[A]ll reasonable efforts" to reemploy such former employees must be made. 5 U.S.C. § 8151(b)(2).

There is no legislative explanation of "all reasonable efforts" or "priority to placing [the applicant] ... in his former or equivalent position." Clearly, (b)(2) applicants are not guaranteed reemployment, as are (b)(1) applicants. The continued absence of an injured employee for over a year might naturally require the employing agency to replace him permanently. *Cf.* Postal Service Employee and Labor Relations Manual (ELM), Part 545.91, *reprinted in* Postal Bulletin, RB–21215 (Oct. 22, 1979) (extended leave policy; separation from service authorized if an employee is not likely to return to work). In such a case, the statute would, however, require the agency to make "all reasonable efforts to place" the former employee in an equivalent position or in any future vacancy, and in so doing, to "accord [him] priority."

In 1978, OPM was charged with implementing the Federal Employees' Compensation Act. *See generally* S.Rep.No.969, 95th Cong., 2d Sess. (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723. In fulfillment of its charge, OPM has provided that

An employee who was separated because of a compensable injury and whose recovery takes longer than 1 year from the date compensation began (or from the time compensable disability recurs if the recurrence begins after the injured employee resumes regular full-time employment with the United States), is entitled to *priority consideration* for restoration to the position he or she left or an equivalent one provided he or she applies for reappointment within 30 days of cessation of compensation. (See Parts 302 and 330 of this chapter for more information on how this may be accomplished for the excepted and competitive services, respectively.)

5 C.F.R. § 353.07 (emphasis added). Under this regulation, an application for reemployment by a former employee whose disability exceeds one year is entitled to "priority consideration." "Priority consideration" is, in a case involving the Postal Service (an excepted service under 5 U.S.C. § 8101(1)(A)), defined by 5 C.F.R. § 302. Section 302.202 *requires* agencies to establish "qualification standards such as those relating to experience and training, citizenship, minimum age, physical condition, etc.,

which shall relate to the duties to be performed." The standards established must be a matter of public record, available to all applicants, and must be applied uniformly.[3] In addition, section 302.203 *allows* the agency to adopt disqualifying factors, which *may* include:

(a) Dismissal from employment for delinquency or misconduct;

(b) Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct;

(c) Intentional false statement or deception or fraud in examination or appointment;

(d) Habitual use of intoxicating beverages to excess;

(e) Reasonable doubt as to the loyalty of the person involved to the Government of the United States;

(f) Any legal or other disqualification which makes the individual unfit for the service; or

(g) Lack of United States citizenship. R.A. B–3.

The Postal Service implemented the OPM regulations in Part 546.1 of the ELM. This provision simply reiterates the restoration rights of disabled employees under 5 U.S.C. § 8151 and 5 C.F.R. § 353.307 by guaranteeing reemployment to those who overcome their job injury within one year, Part 546.121, and by requiring the USPS to give "priority consideration" to those who overcome their job injury after one year, Part 546.131. For the latter group, a reemployment list is established. That list is divided into two categories: category one includes those entitled to a ten-point veterans' preference; category two includes all other recovered former employees. Recruitment must begin with the veterans group. Next, members of the second group must be considered. And only after that can those without previous Postal Service association be considered.[4]

**3.** 5 C.F.R. § 302.202 provides in full:

Before making an appointment to a position covered by this part, each agency shall establish qualification standards such as those relating to experience and training, citizenship, minimum age, physical condition, etc., which shall relate to the duties to be performed. An agency may delegate the establishment of standards relating to a group of positions or a specific position to the appropriate administrative level or subdivision of the agency and that level or subdivision may amend or modify the standards in accordance with the needs of the locality in which the position is located, but the agency shall determine that each standard established is in conformity with this part. Each agency shall make its standards a matter of record in the appropriate office of the agency, and shall furnish information concerning the standards for a position to an applicant on his request. Each agency shall apply the standards for a position uniformly to all applicants, except for such waivers as are provided in this part for a preference eligible. An agency shall not include a minimum educational requirement in qualification standards, except for a scientific, technical, or professional position the duties of which the agency decides cannot be performed by a person who does not have a prescribed minimum education. An agency shall not establish a maximum age requirement for any position. Each agency shall make a part of its records the reasons for its decision under this section, and shall furnish those reasons to an

applicant on his request. The qualification standards shall include:

(a) A provision for waiver by the agency of requirements as to age, height, and weight for each preference eligible when the requirements are not essential to the performance of the duties of the position; and

(b) A provision for waiver by the agency of physical requirements for each preference eligible when the agency, after giving due consideration to the recommendation of an accredited physician, finds that the applicant is physically able to discharge the duties of the position.
R.A. B–2–3.

**4.** Part 546 states in full:
546 REEMPLOYMENT OF EMPLOYEES INJURED ON DUTY
546.1 Law
.11 General. The USPS has legal responsibility to employees with job-related disabilities under 5 U.S.C. 8151 and the Office of Personnel Management's (OPM) regulations, as outlined below.
.12 Disability Fully Overcome Within 1 Year
*.121 Obligation.* When the injury or disability is fully overcome within one year after the commencement of compensation payments from OWCP, or after compensable disability recurs, the USPS must give an employee the right to resume employment in the former or equivalent position.
*.122 Rights and Benefits.* Upon reemployment, all rights and benefits which an em-

■ The government also commends our attention to Part 313.5 of the Postal Service's Personnel (P–11) Handbook, which states:

> .51 General. An eligible *may be* omitted from consideration for employment because of previous unsatisfactory service. This may include postal, private sector, or other agency employment, including debarment by the Office of Personnel Management. The service must have been long enough to be considered a full and fair trial, and the character of the service must have been such that the eligible is unlikely to be able to perform satisfactorily in the new position ....

> .522 Excessive tardiness or absence, or poor conduct in previous postal employment (even though no disciplinary action was taken at the time of resignation), *could justify* eliminating an eligible from consideration, if the service was recent and there is no indication that the individual has improved work habits.

*Reprinted in* R.A. D–5 (emphasis added). The government points to this provision as a disqualifying factor, promulgated pursuant to 5 C.F.R. § 302.203. However, this provision of the Handbook applies only to *routine* applications for employment. Applications by former employees seeking restoration under 5 U.S.C. § 8151(b) are covered by Part 218.2 of the Handbook, *reprinted in* Petitioner's Reply Brief Appendix at 2, which refers to the statute, the OPM regulations and subchapter 540 of the ELM:

Former employees who have been receiving compensation for job-related injury or illness incurred during their postal employment are granted, upon recovery, certain restoration rights by 5 USC 8151, and implementing regulations in 5 CFR Part 353. Basically, the statute provides that the former employee must be immediately and unconditionally restored to the former or equivalent position if fully recovered within one year of the commencement of compensation. If the employee fully recovers more than one year after the commencement of compensation, the USPS will make all reasonable efforts to place (and give priority to placing) the employee in the former or equivalent position. See ELM 540.

5 C.F.R. § 302.202 expressly requires agencies to establish and publish qualification standards for the reemployment of 5 U.S.C. § 8151(b)(2) applicants and to apply them uniformly. The Postal Service satisfied that requirement by promulgating Part 546 of the ELM.[5] Part 313.5 of the Postal Service Personnel Handbook does not satisfy the OPM requirement because it was not published pursuant to § 302.202 and because it appears to allow *ad hoc*, rather than "uniform[ ]," decisions on the basis of past work performance to be made regarding employment.

B. *Administrative Interpretation of the Statute and Regulation*

The basis of the Board's final decision to reject Raicovich's application for reemploy-

ployee would have had or acquired in the former position, had there been no injury or disability, must be restored.
　.13 Disability Fully Overcome More Than 1 Year
　.131 *Obligation.* When the injury or disability is fully overcome more than one year after compensation began, the USPS must give an employee priority consideration for reemployment into the former position or an equivalent one.
　.132 *Reemployment List.* The names of all former employees who fully recover from their compensable disabilities more than one year after compensation begins must be entered on a reemployment list in two groups. *Group one* will include all such former employees who are entitled to 10 point veteran

preference. *Group two* will indicate all other such former employees. Persons in *group one* will be considered for employment before persons in *group two*, and persons in *group two* will be considered before other sources of recruitment, such as transfers from other agencies, reinstatements, or appointments from hiring registers.
　.133 *Rights and Benefits.* The same as 546.122.

5. This is not to suggest that the USPS could have specifically established past unsatisfactory service as a disqualifying factor. Had it done so, serious problems with its action and the decision of the MSPB would remain. *See* p. 424 *infra.*

ment was a history of three disciplinary actions over an eighteen year period of service. The Board supported its decision with a recent precedent, *Thompson v. United States Postal Service*, MSPB Docket No. DA035399002 (March 26, 1981), *reprinted in* Petitioner's Appendix (P.A.) C.

*Thompson* also involved an application for reinstatement by a former USPS employee who recovered from a work injury after one year from the commencement of compensation. The Postal Service had denied Thompson's application because his previous work performance and conduct indicated that reemployment would "not be in the best interest of the agency." P.A. E–5. On appeal to the MSPB, the agency claimed, *inter alia*, that Thompson "had had a series of disciplinary problems, beginning in April of 1972 and culminating with a fourteen-day suspension that was issued but not served because [Thompson] incurred his back injury and went on disability" before the suspension could be served. *Thompson*, slip op. at 2; P.A. C–2. The Presiding Official found that the agency failed to afford Thompson priority as required by the statute and OPM regulations.[6] The Board reversed and remanded, relying upon 5 U.S.C. § 8151(b), 5 C.F.R. §§ 302 and 353.-307, and, significantly, *see* p. 422 *supra*, Part 313.5 of the Postal Service's Handbook, finding that the Presiding Official had "erroneously" failed to consider Thompson's previous unsatisfactory service. Under Part 313.5 of the Handbook, concluded the Board:

> previously unsatisfactory service may be deemed a proper disqualifying factor under the following circumstances: (1) the kind of work-related behavior that may be encompassed by that factor must be limited to behavior of such a nature as to warrant disciplinary action; (2) the agency must have taken or not had sufficient

time to take reasonably prompt action against such behavior; and (3) the incidence of the behavior warranting disciplinary action must have been not long prior to the date on which the former employee began receiving disability compensation, so as to indicate that the former employee had not reformed or improved his or her behavior with respect to the performance of the duties of his or her former position.

*Thompson*, slip op. at 11–12.

■ We agree with the Board that, for all relevant purposes, *Thompson* is indistinguishable from the present case. Although the final suspension was not served in *Thompson*, it had been imposed. Had Thompson not been injured, he would only have been suspended for two weeks. Thus, even though Raicovich had served his final thirty-day suspension eight months before his injury, his situation is substantially similar to Thompson's. Therefore, by vacating the agency's decision here, we also signal our disagreement with *Thompson*: Part 313.5 ought not to have been consulted; an agency may not take account of previous unsatisfactory service in cases such as *Thompson* and this one where that service would not have resulted in dismissal had the injury not occurred.

### C. *Raicovich's Petition*

■ Petitioner argues that the Board's decision is inconsistent with the plain language of the statute, the legislative history and implementing regulations. We agree. The statute requires agencies to "make all reasonable efforts to place" former employees who have required over one year to recover from a job injury and, in so doing, to "accord [them] priority." 5 U.S.C. § 8151(b)(2). Neither statutory obligation was fulfilled by the agency: after examining his previous employment record, no

---

**6.** The opinion of the Presiding Official is consistent with the opinion of another Presiding Official in *Wall v. United States Postal Service*, MSPB Docket No. BN035309003 (Jan. 31, 1980), P.A. D (burden of proof placed upon agency to show previous unsatisfactory service warranted refusal to reinstate). However, we disagree with the opinion of the Presiding Official in *Wall* to the extent that it would allow previous unsatisfactory service, which did not result in dismissal of a continuously employed worker, to be considered on a 5 U.S.C. § 8151(b)(2) application.

effort was made to place petitioner in his former or an equivalent position; and moreover, petitioner's application for reinstatement was denied while other applicants with no prior USPS association were being hired. It would be a perversion of the statute, indeed, were we to agree with the government and to allow an agency to disregard its statutory obligations because of an applicant's past misconduct which did not result in dismissal.[7] To do so would be tantamount to permitting double punishment for the same misdeed in the guise of implementing a statute enacted to confer additional benefits on injured workers.

■ The legislative history of 5 U.S.C. § 8151(b)(2) is not especially illuminating. The House and Senate Reports do little more than repeat the plain language of the statute. See S.Rep. at 3–4, 10; H.R.Rep. at 4, 12. Similarly, those who expressed themselves during the floor debates added little to the statutory language. See generally 120 Cong.Rec. 13397–402, 27672–76 (1974). However, it appears in general that by enacting the 1974 Amendments to the Federal Employees' Compensation Act, Congress sought to do everything feasible to compensate and reinstate federal employees injured in the line of duty: during the period of their disability they were to incur no loss of benefits; if they recovered within a year, reemployment was guaranteed; and if their recovery took longer, all reasonable efforts were to be made to place them in their former job or an equivalent position, and priority was to be accorded them in securing a position. In short, Congress sought to accord injured workers treatment equal to that which they would have received but for their injury. They are not to be accord-

ed *greater* rights than they would have had had employment been continuous, but certainly they are not to suffer any loss of rights or benefits because of an injury received in the course of employment. See 120 Cong.Rec. 13400 (remarks of Rep. Esch). Thus, it would be totally inconsistent with the statutory purpose to refuse to rehire a recovered former employee on the basis of prior conduct for which he was not dismissed. On the other hand, if during the period of compensation, a former employee engaged in conduct which would have resulted in expulsion from service had he then been employed, we agree that that would be an appropriate matter for consideration on an application for restoration. Cf. 5 C.F.R. § 302.203. Similarly, if the former employee engaged in conduct shortly before his injury which would have resulted in dismissal but for the intervening injury, that too may be considered a disqualifying factor. Here, however, petitioner's previous misconduct did not rise to a level requiring expulsion, but, in fact, produced only disciplinary suspension ranging from two to thirty days.[8]

The actions of the Postal Service are also alleged to be contrary to OPM's regulations implementing the statute. Although the regulations, interestingly, speak of "priority consideration" rather than "priority in placing," if we are to interpret them in a manner consistent with the statute, they are not satisfied by according merely procedural priority rather than substantive priority. Thus, the government's suggestion at oral argument that the regulations could be satisfied by according "prompt," "special," "individual," or even "careful"—to use the words appearing in the USPS letters to Mr. Raicovich—consideration, where such con-

---

**7.** Counsel for the government acknowledged at oral argument that petitioner could not have been dismissed at the time of his injury on the basis of the three disciplinary incidents. Moreover, he acknowledged that had petitioner recovered and sought reinstatement within a year of the disabling injury, restoration would have been mandatory.

**8.** Even if the last sanction for misconduct had not yet been served because of an intervening injury, as in *Thompson*, punishment upon ap-

plication and reentry could be no greater than that which would have been imposed had service been continuous. (In *Thompson*, petitioner should have been subjected to no more than a two week suspension, not refusal to restore.) In this case, vacancies existed, petitioner was an employee in good standing at the time of his injury, and nothing occurring before or after the injury has since come to light to disqualify petitioner. Therefore, refusal to restore was not in accordance with the statute.

sideration includes prior unsatisfactory service, cannot be accepted. *See also* Respondent's Brief at 17. To comport with the statute, priority consideration requires that a former employee in good standing at the time of his injury, who has not engaged in egregious behavior of the sort enumerated in 5 C.F.R. § 302.203, must be placed on an appropriate priority employment list and reemployed when vacancies arise. *See* 5 C.F.R. §§ 302.303 and 302.304 (Maintenance of employment lists; Arrangement of ratings). A 5 U.S.C. § 8151(b)(2) applicant may only be disqualified from restoration for the same conduct that would have justified his discharge if he were continuously employed.[9]

## CONCLUSION

For the foregoing reasons, the petition is granted, the decision of the Board is set aside, and the Board is directed to order petitioner reinstated to his former or equivalent position with all attendant benefits, and to make him whole for all losses suffered since December 5, 1979.

9. Finally, we should note that Part 546.1 of the ELM, which merely reiterates the restoration rights provided by the statute and OPM implementing regulations, was also disregarded by the USPS and MSPB.